Dear Mr. Long:
This office is in receipt of your request for an opinion of the Attorney General in regard to the filling of a vacancy on the Commission Council of the City of Donaldsonville. You state that on December 1, 1999 the elected Commissioner of Finance, Heldon J. Weil, died and the Council declared the office vacant. The Council appointed Constance M. Weil to fill the vacancy for the office of Commissioner of Finance, and adopted a proclamation calling a special election to fill the vacancy with a certified copy being sent to the Secretary of State's office. The City was notified by the Administrator of Elections for the Secretary of State that in accordance with R.S. 18:602 (E)(4) a special election would not be required to fill the vacancy, that the interim commissioner would serve until the current term ends, and that the regular primary election for the office would be October 7, 2000. However, Commissioner Jacobs notified various public officials that R.S.18:602 (G) gives home rule charter governments the right to use their home rule charters for filling of vacancies.
You indicate that the City of Donaldsonville operates under a Home Rule Charter, which provides as follows:
 Sec. 2-03. Vacancies
 C. If a vacancy in the office of mayor or commissioner occurs with one year or more of the term of office remaining to be served, it shall be filled by the vote of the qualified electors voting in a special election called by the council for that purpose. Said election shall be held within ninety (90) days after such vacancy occurs, unless another election is already scheduled to be held in the City within six (6) months of the occurrence of the vacancy, in which case the election to fill the vacancy shall be held at the time of the already scheduled election. The majority of the remaining members of the council members shall fill the vacancy by appointment, said person filling the vacancy to serve from the date of the appointment to the date on which the person elected in the special election shall be seated.
 A vacancy on the council occurring less than one (1) year prior to the expiration of the term of office shall be filled by appointment by a majority of the remaining members of the council, and the person appointed shall serve for the remainder of the term of office.
You ask whether the home rule charter controls the issue or whether the Election Code, R.S. 18:602 (E)(4), controls the issue.
In this case, the vacancy occurred on December 1, 1999 and the term of office does not expire until December 31, 2000. Therefore, the vacancy occurred "[w]ith one year or more of the term of office remaining to be served" as stated in the charter and in accordance with the charter it should have been "[f]illed by the vote of the qualified electors voting in a special election called by the council for that purpose", within ninety (90) days of the vacancy, unless another election was already scheduled to be held in the City within six (6) months of the occurrence of the vacancy. No other election was scheduled within six months,
However, the regularly scheduled election for the new term (1/1/2001) of office for Commissioner is scheduled for October 7, 2000, ten months after the vacancy. Thus, this charter provision is in direct conflict with the Louisiana Election Code, R.S. 18:602 (E)(4), which provides:
 (4) If the unexpired term of a municipal office covered by Subsection A is one year or more, but the vacancy occurs within one year of the regular municipal primary election for that office, no special election will be called and the appointee shall serve for the remainder of the term of office.
The 1974 Louisiana Constitution provides in Article 11, Section 1 that "the legislature shall adopt an election code which shall provide for permanent registration of voters and for the conduct of all elections." In compliance with this constitutional mandate, the Legislature enacted Louisiana Acts 1976, No. 697, which became the current Election Code, R.S. 18:1 et seq. The Louisiana Election Code is sui generis, or one of a kind. Nevertheless, it has been and remains our opinion that one exception to the Election Code that is applicable to home rule plans of government in certain instances is R.S. 18:602 (G). This section provides:
 G. The provisions of this Section [18:602] shall apply to all local governmental subdivisions, including those operating under the provisions of a legislative charter, but shall not apply where the filling of a vacancy otherwise is provided for by the constitution or by the home rule charter or home rule plan of government of the affected local governmental subdivision. Such constitutional home rule plan provisions shall govern the filling of the vacancies.
Our opinion on this issue has been and remains that this exemption applies only to the procedure for filling the vacancy, but not to the actual date of the election. Atty.Gen. Op. Nos. 99-390, 98-2, and 77-7. Our opinions on this issue have dealt with selection of election dates, i.e. determination of the congressional election dates, and selecting a special election date in accordance with those set by the Election Code (R.S. 18:402). We have only referred to the Election Code for election dates and not for the procedure of filling vacancies in home rule charter governments, which are exempt under R.S. 18:602 (G).
It is our opinion today that if we were to apply R.S. 18:602 (E)(4) in this case, we would in fact be subjecting the home rule charter government to the exact provisions they are exempt from, as per R.S.18:602 (G). We reach this opinion on the basis that compliance with 602 (E)(4) interferes with the charter's provisions for the procedure
of filling the vacancy and not just the dates of the election. For if we were to conclude that 602 (E)(4) controlled, the charter's procedures of filling the vacancy by special election within 90 days and for the appointed person to serve only until the person is elected at a special election would be violated. It is our intention herein to distinguish our earlier opinions as to the Election Code controlling with regard to the dates of elections [R.S. 18:402] from R.S. 18:602 (E)(4). In other words, when applying 602 (E)(4) would violate the spirit and letter of the charter's provisions, it is not applicable to a charter government, as per 602 (G). That is not to say that 602 (E)(4) may never be applicable to a charter government, but that it will have to be determined on a case by case basis, looking at the specific language of the charter.
That being said, we turn to the facts of this matter. The charter should have been followed as to the procedure for filling the vacancy. The Council did just that. They declared the vacancy, appointed a person to fill the vacancy until a special election could be held, which they called within ninety days of the vacancy. Nevertheless, the Secretary of State's office advised that the Election Code [R.S. 18:602 (E)(4)] controlled and that a special election would not be required, the interim commissioner would serve until the current term ends, and that the regular primary election for the office would be October 7, 2000. The City Attorney then requested our opinion on this matter, and it is our opinion that the Secretary of State's office incorrectly applied the Election Code [R.S. 18:602 (E)(4)] in this instance.
The next available election dates for a primary and general election are October 7, 2000 and November 7, 2000. Thus, the question remains whether the Council can in fact follow the procedures of its charter and have the special election conducted either prior to this regularly scheduled election or at this regularly scheduled election. Our opinion is in the negative in both instances. There are no special election dates in R.S. 18:402 prior to the regularly scheduled election, and conducting the special election at the regularly scheduled election would lead to an absurd result.
In Cusimano v. Edwards, 504 So.2d 596, where there was a vacancy in a judicial position in October of 1986, the Governor did not issue a proclamation calling for the special election to fill the vacancy until February of 1987. Since the Governor waited until February of 1987 to call the election, the election could not be held at the April special election date, and was called for August of 1987. Cusimano filed a mandamus action, seeking to have the Governor rescind the proclamation and call the election for the April date. While the Court found that the governor failed to call the special election within the time period provided by the Election Code, the Court further found that Cusimano failed to seek relief timely in order for the Court to issue an order that would comply with the provisions of the Election Code. Thus, the Court held, "[i]t is inappropriate for this court to issue an order directing a public official to perform an act which would result in further violation of the Election Code." Thus, we are unable to advise the Secretary of State to conduct a special election herein, as no special election date is available prior to the regularly scheduled election date of October 7, 2000.
In sum, the City of Donaldsonville's Charter controls with regard to the filling of a vacancy on the Council, regardless of the Election Code's provision in R.S. 18:602 (E)(4), as the charter is specifically exempt from the Election Code under R.S. 18:602 (G), except as to the date of the election. The city properly called this election, but the Secretary of State's office incorrectly interpreted the Election Code to prohibit the special election herein. Additionally, to comply with the spirit of the charter, that is that the person appointed only serve until a person is elected at a special election, it is our opinion that the regularly scheduled election be treated also as a special election only insofar as the person elected be immediately commissioned both for the remainder of the term and for the new term to begin on January 1, 2001. This does not mean that there should be two elections. One election held on October 7, 2000 (primary) and November 7, 2000 (general) will suffice for both the remainder of the term and the new term.
We hope this opinion addresses all of your questions. If we can be of further assistance, please advise.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 __________________________ ANGIE ROGERS LAPLACE Assistant Attorney General
RPI/ARL
Cc: Hon. W. Fox McKeithen Hon. Suzanne H. Terrell